UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                    For Online Publication Only
-------------------------------------------------------------X
TYRONE O. TERRELL,

               Petitioner,

        -against-                                    **MEMORANDUM AND ORDER**
                           13-CV-5443 (JMA)
JOSEPH T. SMITH,

              Respondent.
-------------------------------------------------------------X

**APPEARANCES:**

Tyrone O. Terrell, pro se
*For Petitioner*

Cristin Connell and Sarah M. Spatt, Assistant District Attorneys
Alyson Gill, Assistant Attorney General
Madeline Singas, District Attorney of Nassau County
262 Old Country Road
Mineola, NY 11501
*For Respondent*

FILED
CLERK
5/26/2017 2:15 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

      Tyrone Terrell ("Terrell"), proceeding pro se, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254.  After a jury trial in state court, Terrell was convicted of second-degree murder for strangling his girlfriend.  He is presently incarcerated and serving an indeterminate term of twenty-five years to life imprisonment.

      In the pending petition, Terrell asserts five grounds for habeas relief:  (1) the trial court's failure to submit a lesser-included offense of first-degree manslaughter, (2) ineffective assistance of trial counsel based on various alleged errors made by counsel at trial; (3) ineffective assistance of trial counsel concerning a potential plea offer; (4) ineffective assistance of appellate counsel on various grounds; and (5) the trial court's allegedly excessive sentencing.  Terrell also seeks an

evidentiary hearing to further develop the record.  For the following reasons, Terrell's petition is DENIED in its entirety, and his request for an evidentiary hearing is DENIED.

## I.  BACKGROUND

### A. The Trial and Conviction

At trial, the evidence showed the following.  On the night of June 23, 2008, Terrell killed his girlfriend, Kimberly Fletcher.  As explained below, Terrell ultimately confessed to killing Fletcher, providing written and videotaped confessions to the police, which were introduced at trial.  (Trial Tr. 430–45, 465–76.)[1]  Terrell also confessed to his cousin Donald Peeler, who testified at trial.  (Tr. 298–302.)  Additionally, Terrell told his friend Carol Garrison that he "did it"—Garrison also testified at trial.  (Trial Tr. 349.)

Terrell and Fletcher, who were living in an abandoned house, usually spent their days collecting recyclables to buy beer and drugs.  (Trial Tr. 434–35, 441–42; see also Hr'g Tr. 82–84.)  On June 23, Terrell and Fletcher got into an argument because he believed that she had stolen a car battery out of someone's yard.  (Trial Tr. 435; see also Hr'g Tr. 82–84.)  Both Terrell and Fletcher had been drinking that night.  (Trial Tr. 433–35, 442–43, 493.)  Tempers flared, and Terrell threw Fletcher down on a bed and told her he "was going to kill her."  (Trial Tr. 435, 443, 460.)  He first choked her with his hands, but then he took off his belt, wrapped it around her neck three times, and pulled tightly.  (Trial Tr. 302, 435, 443.)  Terrell stepped on Fletcher's chest for leverage and also smothered her face with a pillow.[2]  (Trial Tr. 435, 491.)  Some evidence at trial indicated that, after Fletcher began to throw up, Terrell cleaned her mouth off and tried to give her CPR.  (Trial Tr. 443.)

---

[1]  "Trial Tr." refers to the trial transcript, People v. Terrell Trial Tr., Jan. 5-9, 12, 2009, ECF No. 15-2.  "Hr'g Tr." refers to the hearing transcript, People v. Terrell Hr'g Tr., Oct. 28, 2008, ECF No. 15-1.  "Sentencing Tr." refers to the transcript for the sentencing proceedings, People v. Terrell Sentencing Tr., Mar. 18, 2009, ECF No. 15-3.

[2]  In his written confession, Terrell admitted that the put the pillow over Fletcher's face because "if I was going to kill her, I didn't want to look at her."   (Trial Tr. 443.)

Terrell then slept next to Fletcher's corpse.  (Trial Tr. 444.)  During the night, he again attempted to revive her by performing CPR.  (Trial Tr. 444.)  When Fletcher did not respond, Terrell cut her hair and went back to sleep.  (Trial Tr. 435–36.)  He awoke again around 3:30 a.m., went out to collect recyclables, came back around 6:30 a.m., and realized that Fletcher was dead.  (Trial Tr. 436.)

Soon after, Terrell left the house to collect more recyclables.  (Trial Tr. 402–03.)  While he was out, Terrell told both a friend, Carol Garrison, and his cousin, Donald Peeler, that he killed Fletcher.  (Trial Tr. 298–302, 307, 349–51.)  Peeler then called the police.  (Trial Tr. 303–04.)  The police and Peeler arrived at the abandoned house and spotted Terrell climbing out of a rear window.  (Trial Tr. 318–19.)  After learning that the victim's body was inside the house, the police arrested Terrell.  (Trial Tr. 401, 436–37.)  As the police escorted him to the squad car, Terrell became irate, yelling at Peeler, "Why did you give me up?  Why did you call the police?" (Trial Tr. 403.)

Initially, Terrell told the police that he and Fletcher were drinking and "smoking weed," when Terrell passed out.  (Trial Tr. 402.)  Terrell claimed that when he woke up Fletcher was dead.  (Trial Tr. 402, 412.) Terrell, however, later confessed to the killing.  He signed a written confession.  (Trial Tr. 430–33, 437–45.)  He also spoke with an assistant district attorney and admitted, on videotape, what he had done.  (Trial Tr. 465–69, 473–76.)  Based on this evidence, Terrell was charged with one count of second-degree murder, under New York Penal Law § 125.25(1).

At a pre-trial hearing before the Honorable David J. Ayres, Terrell's attorney stated that Terrell refused to consider any potential plea offer that would require him to plead guilty to first-

degree manslaughter under New York Penal Law § 125.20(1).  (Hr'g Tr. 2, 32–33.)  Specifically, defense counsel stated the following in open court, with Terrell present:

> Your Honor, pursuant to our conversation in the back, which I will make absolutely clear, an informal discussion about a potential plea in this case, I spoke to Mr. Terrell and he is not interested even in a plea to manslaughter in the first degree.  I wanted to make it clear, before the People went back to talk to her boss, that he is not interested in such a disposition.  He is looking for a manslaughter [charge] in the second degree.

(Hr'g Tr. 2, 32–33 (emphasis added).)  The court then told the prosecutor, "Don't waste your breath talking to your supervisor about a plea for Mr. Terrell."  (Hr'g Tr. 33.)

Terrell proceeded to trial before Justice Ayres.  At trial, Terrell presented no witnesses. (Trial Tr. 576.)  Defense counsel's argument hinged on the theory that Terrell was too intoxicated to intend to cause Fletcher's death.  (Trial Tr. 574.)  That strategy failed.  The jury convicted Terrell of second-degree murder, and the court sentenced him to an indeterminate term of twenty-five years to life imprisonment and imposed a $5,000 fine, among other things. (Sentencing Tr. 11.)

Three events at trial are notable for the purposes of this petition.

First, before voir dire started, defense counsel alerted the court to the fact that his firm had represented Garrison, Terrell's friend, in an unrelated matter.  Both the court and the parties agreed that Garrison would not testify concerning this prior representation.  (Trial Tr. 6–7.) Garrison's testimony was relatively brief—she testified that Terrell came to her home and stated, "I did it, watch the news, get a newspaper."  (Trial Tr. 349.)

Second, as the jurors made their way to the jury room one day, a defendant in an unrelated case told them to "[d]o the right thing."  (Trial Tr. 335–36 (internal quotation marks omitted).)  The parties discussed the matter, and the court ultimately apologized to the jury for

this incident and issued a curative instruction to the jury to disregard any outside influences. (Trial Tr. 336, 338–39.)

Third, at some point, both trial counsel and the prosecutor extended birthday wishes to the judge. (Trial Tr. 571.) As discussed infra, evidence submitted in the instant habeas proceeding indicates that the jury also sang happy birthday to the judge, although that incident is not recorded in the trial record.

**B. Post-Conviction Proceedings**

**1. The Direct Appeal**

With the aid of appellate counsel, Terrell appealed his conviction to the Second Department of the New York Appellate Division. On appeal, Terrell's appellate counsel argued that Terrell's sentence was excessive. (See Def.'s App. Div. Br., Dec. 2, 2009, ECF No. 15-4.) Terrell also submitted a pro se supplemental brief in which he argued that: (1) the trial court improperly refused to submit a lesser-included offense of first-degree manslaughter to the jury; (2) his sentence and the $5,000 fine levied against him were both excessive; and (3) his trial counsel rendered ineffective assistance. (See Def.'s Pro Se Suppl. Br., ECF No. 15-6.) With respect to the ineffective assistance claims, Terrell argued, inter alia, that trial counsel: (1) failed to request a mistrial after the "do the right thing" comment was made to the jury; (2) failed to object when the jury sang "happy birthday" to the judge; (3) failed to adequately investigate the case and raise an extreme emotional disturbance ("EED") defense; and (4) had a conflict of interest because counsel had previously represented prosecution witness Garrison. (Id.)

On November 9, 2010, the Second Department affirmed Terrell's conviction. People v. Terrell, 78 A.D.3d 865 (2d Dep't 2010). The Second Department stated that Terrell's ineffective assistance claims "are based, in part, on matters dehors the record, which cannot be reviewed on

direct appeal." Id.  The Second Department, however, also concluded that "[i]nsofar as we are able to review the defendant's [ineffective assistance] claims, we find that defense counsel provided meaningful representation" and that the intoxication defense pressed by counsel was the "only viable defense." Id.  Regarding Terrell's arguments about the lesser-included offense instruction, the Second Department found that Terrell waived this claim. Id.  The Second Department also rejected the excessive sentence claim. Id.

Terrell then requested leave to appeal that decision.  The New York Court of Appeals denied that request on March 9, 2011.  People v. Terrell, 16 N.Y.3d 837 (2011).  Terrell did not petition the United States Supreme Court for a writ of certiorari.

### 2. The First Motion to Vacate

In July 2011, Terrell filed a motion, pro se, under Section 440.10 of the New York Criminal Procedure Law.  (See Def.'s First 440.10 Mot., July 25, 2011, ECF No. 15-12.)  He contended that his trial counsel was ineffective for, inter alia, failing to call an expert witness and for failing to investigate and raise an EED defense.  On December 22, 2011, Justice David Ayres, of the Supreme Court of Nassau County, denied Terrell's claims on the merits.  (Order Denying Def.'s First 440.10 Mot., Dec. 22, 2011, ECF No. 15-15.)  Eight months later, the Appellate Division denied Terrell's request for leave to appeal.  (Order Denying Leave to Appeal Def.'s First 440.10 Mot., Aug. 15, 2012, ECF No. 15-18.)

### 3. The Coram Nobis Petition

In September 2012, Terrell, acting pro se, moved for a writ of error coram nobis, asserting that his appellate counsel was ineffective.  (Def.'s Coram Nobis Appl., Sept. 18, 2012, ECF No. 15-19.)  The Second Department denied Terrell's petition, finding that he "ha[d] failed to establish that he was denied the effective assistance of appellate counsel." People v. Terrell,

6

103 A.D.3d 674 (2d Dep't 2013).  Terrell then moved for leave to appeal, which the New York

Court of Appeals denied.  People v. Terrell, 21 N.Y.3d 914 (2013).

### 4. The Second Motion to Vacate

In February 2013, Terrell, again proceeding pro se, filed a second § 440.10 motion,

claiming that his trial attorney failed to adequately counsel him concerning a potential plea offer

for first-degree manslaughter.  (See Def.'s Second 440.10 Mot., Feb. 5, 2013 ECF No. 15-25.)

On June 14, 2013, Justice Ayres denied Terrell's motion pursuant to N.Y. C.P.L. § 440.10(3)(c),

explaining that Terrell "was in a position [to adequately] raise the ground or issue underlying the

present motion but did not do so."  (Order Denying Def.'s Second 440.10 Mot., June 14, 2013,

ECF No. 15-27 (alteration in original).)  Terrell's application for leave to appeal was denied by

the Appellate Division.  (Order Denying Leave to Appeal Def.'s Second 440.10 Mot., Sept. 5,

2013, ECF No. 15-30.)

### 5. The Instant Petition

Following his second motion to vacate, Terrell filed a petition for habeas relief on

September 24, 2013.  He asserts the following grounds for relief:

(1) the trial court's failure to submit a lesser-included offense of first-degree manslaughter;

(2) ineffective assistance of trial counsel based on various alleged errors made by counsel at trial;

(3) ineffective assistance of trial counsel concerning a potential plea offer;

(4) ineffective assistance of appellate counsel on various grounds; and

(5) the sentence was excessive and the $5,000 fine imposed constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

As part of its opposition to Terrell's petition, Respondent included a January 2014 letter that Terrell's trial counsel drafted in response to Terrell's allegations of ineffective assistance. (Lo Piccolo Ltr., ECF No. 15-31.)

## II.  DISCUSSION

### A. <u>Standards of Review</u>

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." <u>Williams v. Taylor</u>, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must satisfy three hurdles: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions. <u>See</u> 28 U.S.C. § 2254.

#### 2. Exhaustion

Generally, a court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement is designed to provide state courts with the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Jackson v. Edwards</u>, 404 F.3d 612, 619 (2d Cir. 2005) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)). Therefore, the petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered. <u>Daye v. Att'y Gen. of N.Y.</u>, 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc). Although

the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts to the claim's federal nature.'"  Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

Where, as here, the petition is a "mixed petition," containing both exhausted and unexhausted claims, the court can deny the unexhausted claims if they are meritless.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Ortiz v. Marshall, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009) ("Federal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous.").

### 3. Procedural Default

A federal court will not review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule."  Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012).  When a state court has dismissed a claim on such a procedural ground, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions explained below.

This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds.  Velasquez v. Leonardo,

898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).

"The concepts of procedural bar and exhaustion often interact in an important way." Dominguez v. Rock, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y. Feb. 9, 2016). "If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted." Id. (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)); Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks and citation omitted).

A petitioner may overcome a procedural bar by demonstrating either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state

procedural rules denied him constitutionally adequate representation.  See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016), cert. denied, 137 S. Ct. 106 (2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).  A petitioner, however, generally cannot invoke this ground unless he first asserted an equivalent independent Sixth Amendment ineffective assistance claim in state court and exhausted his state-court remedies with respect to that claim.  See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petitioner to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . ."  United States v. Frady, 456 U.S. 152, 170 (1982).

Even if a petitioner cannot establish cause and prejudice, a federal court may also excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result: in other words, "that he is actually innocent of the crime for which he has been convicted."  Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)).  To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful."  Schlup, 513 U.S. at 324.

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "difficult to meet." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014). A petition must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding." Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 5. Pro Se Status

Terrell "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). But in light of his pro se status, the Court will construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, Terrell is not excused "from compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (internal quotation marks omitted)).

## B. Claims for Relief

Again, Terrell argues that he is entitled to habeas relief on five grounds (1) the trial court's failure to submit a lesser-included offense of first-degree manslaughter; (2) ineffective assistance of trial counsel based on various alleged errors made by counsel at trial; (3) ineffective assistance of trial counsel concerning a potential plea offer; (4) ineffective assistance of appellate

counsel on various grounds; and (5) the allegedly excessive sentence and the $5,000 fine imposed constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.   As explained below, several of Terrell's claims are procedurally barred, while certain other claims are unexhausted.  In addition, all of Terrell's claims fail on the merits.  Accordingly, the Court denies Terrell's petition in its entirety..

Terrell also requests an evidentiary on certain issues.  As explained below, that request is denied.

### 1. Lesser-Included Offense Claim

Terrell argues that the trial court erred by not submitting the lesser-included offense of first-degree manslaughter to the jury.   (Pet. at 2.)   This claim is procedurally barred and meritless.

First, this claim is procedurally barred because, as the Second Department concluded, Terrell waived this claim by not raising it at trial.  See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005).

Terrell cannot overcome this procedural bar because he has failed to establish cause.  See Coleman, 501 U.S. at 735.  Terrell contends that he can establish cause because trial counsel was allegedly ineffective when he failed to request the first-degree manslaughter charge.   As an initial matter, Terrell cannot establish cause because Terrell has not exhausted this allegation of ineffective assistance.[3]  See Edwards, 529 U.S. at 451–52 (2000).   Moreover, even if this allegation were exhausted, the trial record makes clear that trial counsel decided, as a matter of

---

[3]   The only time that Terrell previously attempted to link a potential first-degree manslaughter charge to any ineffective assistance from trial counsel is in the pro se supplemental brief that Terrell submitted on his direct appeal.  In that brief, Terrell argued that if trial counsel had introduced additional evidence in support of an EED defense, the jury could have found him guilty of only first-degree manslaughter.  This allegation is insufficient to establish cause for Terrell's procedural default because this ineffective assistance allegation, which does not claim that trial counsel should have requested the disputed instruction based on the current trial record, is not sufficiently similar to the instruction argument that the Second Department found to be defaulted.

reasonable trial strategy, to only request an instruction for second-degree manslaughter and to oppose the prosecution's request for a first-degree manslaughter charge.  (Trial Tr. 555–70.) Because trial counsel was not ineffective here, Terrell cannot show cause to excuse his procedural default.[4]  Furthermore, there is no fundamental miscarriage of justice.  See Coleman, 501 U.S. at 735.

Second, even if Terrell's lesser-included offense claim was not procedurally barred (or the procedural bar could be overcome), this claim fails on the merits.  Courts in this Circuit have concluded that there is not clearly established law indicating that "a failure to charge a lesser included offense in non-capital cases" violates the Constitution.[5]  Platt v. Ercole, No. 06-CV-2072, 2010 WL 3852042, at *3 (E.D.N.Y. Sept. 27, 2010) (quoting Lisojo v. Rock, No. 09-CV-7928, 2010 WL 786467, at *9–10 (S.D.N.Y. Mar. 31, 2010) and collecting cases); see also Mercado v. Conway, No. 04-CV-6609, 2009 WL 2157002, at *5 (W.D.N.Y. July 15, 2009) (concluding that petitioner who alleged that trial court erred by not instructing the jury on a lesser-included offense failed to establish cause for procedural default and that, even if petitioner could establish cause, his claim should be rejected on the merits because "the propriety of a state court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional issue").

---

[4] To the extent that Terrell attempts to raise this ineffective assistance argument as an independent ground upon which to grant habeas relief, such a claim fails for the same reasons.

[5] When a petitioner's claim can be considered by a federal habeas court, but the "claim was not adjudicated on the merits" by a state court "'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'"  Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009) (quoting Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006)).  However, as the First Circuit has held, even in such a situation, where AEDPA deference does not apply and the claim is reviewed de novo by the federal habeas court, the petitioner must still meet the requirements of Teague v. Lane, 489 U.S. 288 (1989), a pre-AEDPA decision that requires that the constitutional right invoked by the petitioner "was clearly established by existing precedent at the time the state conviction became final."  Kater v. Maloney, 459 F.3d 56, 62–64 (1st Cir. 2006); cf. Williams v. Taylor, 529 U.S. 362, 379–382 (2000) (discussing the differences and similarities between AEDPA deference and the requirements of Teague).

Thus, Terrell's lesser-included offense claim is denied.

**2. Ineffective Assistance Claims Concerning Counsel's Performance at Trial**

Terrell asserts that his trial counsel rendered ineffective assistance in various ways.  (Pet. at 6–9, 12–13, 19.)

*i.  Standard for Ineffective Assistance of Counsel Claims*

Terrell bears the burden to demonstrate that his defense counsel's performance was so inadequate as to violate his right to assistance of counsel under the Sixth Amendment to the United States Constitution.  See Strickland v. Washington, 466 U.S. 668, 696 (1984).   To prevail, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms;' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation."   United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688).

Under the first prong, the Court "must indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689.   In evaluating counsel's effectiveness, the Court must keep in mind that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."  Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Rompilla v. Beard, 545 U.S. 374, 389 (2005)).   Thus, the record must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687).   Under Strickland's second prong, a petitioner "must establish that he suffered prejudice—in this context, meaning that "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Fulton v. Graham, 802 F.3d 257, 265 (2d Cir. 2015) (quoting Strickland, 466 U.S. at 694).

AEDPA requires federal courts engaging in habeas review to grant state courts substantial "deference and latitude" when considering ineffective assistance of counsel claims that state courts have already rejected on the merits. Harrington v. Richter, 562 U.S. 86, 101 (2011). Federal habeas review of a state court's rejection of an ineffective assistance of counsel claim on the merits is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123–24 (2009).

Before turning to the specific arguments that Terrell raises, it is important to stress that trial counsel presented a coherent theory that Terrell was intoxicated and only wanted to injure the victim, not kill her. (Trial Tr. 574.) At a pre-trial suppression hearing, trial counsel conducted thorough cross-examinations, particularly on Terrell's intoxication level when Terrell made both his oral and written confessions. (Hr'g Tr. 23, 42, 69–70, 110–12.) And, at the trial, defense counsel vigorously advocated for his client, delivering reasoned arguments. (Trial Tr. 291–95, 309, 409, 412, 416, 456–59, 463, 480–93, 580–93.) Given Strickland's highly deferential standard, this Court cannot find that trial counsel rendered ineffective assistance. Moreover, the evidence against Terrell at trial was overwhelming, rendering it difficult for him to show prejudice concerning any claims that defense counsel was ineffective at trial.

The Court will first address Terrell's claims concerning the EED defense and the defense expert. Both of these claims have been exhausted. The Court will then address the remaining claims, some of which are unexhausted and others of which are deemed exhausted because they would be procedurally barred if pursued in state court. As explained below, all of Terrell's claims also fail on the merits.

### ii.  Failure to Investigate and Pursue an EED Defense

Terrell argues that trial counsel should have investigated an EED defense and pursued that defense at trial.  This claim is meritless.

Under New York law, a defendant may assert an affirmative defense that he "acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be."  N.Y. Penal Law § 125.25(1)(a).  To successfully raise this defense, Terrell's counsel would have had to establish that he "suffered from a mental infirmity not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control."  People v. Roche, 98 N.Y.2d 70, 75 (2002).  Trial counsel acted reasonably in not pursuing an EED defense because there was no evidence to support it.

Terrell alleges that he and Fletcher had a fight months prior to the murder and that he had altercations with Fletcher's ex-boyfriend a week before the murder and nine months before the murder.  (Pet'r's Resp. Br. at 15, ECF No. 20; Def.'s Aff., July 1, 2011, ECF No. 15-12.)  Terrell argues that these altercations caused him to undergo an extreme emotional disturbance, resulting in Fletcher's killing.  (Id.)  Terrell claims that trial counsel should have investigated these incidents and raised an EED defense at trial.

As an initial matter, petitioner did not inform trial counsel about Fletcher's ex-boyfriend. (Lo Piccolo Ltr., Jan. 10, 2014, ECF No. 15-31.)  In any event, the gap in time between the altercations at issue and the murder show that trial counsel was not ineffective for failing to pursue an EED defense.  As the state court explained, an EED defense would likely have been unsuccessful.  (Order Denying Def.'s First 440.10 Mot. at 3, Dec. 22, 2011, ECF No. 15-15.)

Instead, trial counsel reasonably argued intoxication, which was the only viable strategy.  (Id.)
Justice Ayres's rejection of this ineffective assistance claim was correct and, in any event, was
certainly permissible once the deferential review required by AEDPA is considered.  Thus, this
argument fails.

### iii.  Failure to Call an Expert Witness

Terrell alleges that trial counsel was ineffective for failing to call a defense expert at trial.
This claim is meritless.

At trial, a forensic pathologist, Dr. Brian O'Reilly, testified for the prosecution.  (Trial Tr.
477.)  Defense counsel considered calling Dr. Mark Taff, a forensic pathologist Terrell had
retained as an expert witness.  However, after cross-examining Dr. O'Reilly, defense counsel
decided not to call Dr. Taff as a witness.  (Trial Tr. 545.)  Defense counsel concluded that it was
unnecessary to call Dr. Taff because defense counsel was able to elicit sufficient helpful points
during Dr. O'Reilly's cross-examination.  (Trial Tr. 545; see also Lo Piccolo Ltr. at 1 (noting
that "the points raised during cross-examination were sufficient for closing argument
purposes").)  Although Dr. Taff was not called to the stand, defense counsel used suggestions
from a report prepared by Dr. Taff to cross-examine Dr. O'Reilly.  (Trial Tr. 498, 502; see also
Gov't's Mem. in Opp. to Def.'s First Mot. to Vacate at 8–9, Aug. 22, 2011, ECF No. 15-14;
Report of Dr. Taff, Ex. B to Def.'s First Mot. to Vacate, July 25, 2011, ECF No. 15-12.)
Heeding Dr. Taff's suggestions, defense counsel elicited testimony that:  (1) Dr. O'Reilly only
testified for the prosecution in other cases, which suggested potential bias; and (2) Dr. O'Reilly
had failed to match up Terrell's belt with the victim's skin trauma.  (Trial Tr. 489, 502.)

Terrell now alleges that defense counsel was ineffective for failing to call Dr. Taff as a
witness.

As the facts recounted above make clear, defense counsel advanced a reasonable strategy to rebut Dr. O'Reilly's testimony and made a reasonable strategic decision not to call Dr. Taff as a witness. Moreover, because the evidence against Terrell was overwhelming, Terrell cannot show that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Justice Ayres's rejection of this ineffective assistance claim was correct and, in any event, was certainly permissible once the deferential review required by AEDPA is considered.

### iv.  Failure to Investigate

In addition to alleging that trial counsel failed to investigate witnesses related to a potential EED defense, Terrell also asserts, in conclusory fashion, that trial counsel failed to investigate other issues, including the crime scene and unidentified witnesses. This claim does not appear to be exhausted. In any event, this claim is clearly meritless. Terrell does not even identify any helpful testimony or other evidence that trial counsel should have discovered.

### v. Failure to Request a Mistrial After an Unrelated Defendant Made a Comment to the Jury

Terrell argues that he received ineffective assistance when his trial counsel failed to request a mistrial after an unrelated defendant told the jury to "[d]o the right thing." (Pet. at 6–7; see also Trial Tr. 335–36 (internal quotation marks omitted).) This claim is deemed exhausted because it would be procedurally barred. This claim also fails on the merits.

Terrell raised this claim with the Second Department on his direct appeal. The Second

Department affirmed his conviction.[6]  Terrell, however, failed to appeal this claim to the New York Court of Appeals.  Although Terrell sought leave to appeal the Second Department's decision, he did not identify any specific grounds in his request for leave and, thus, failed to exhaust this particular claim.[7]  (Leave Ltr. to Appeal the Second Department's Decision, ECF No. 15-9); see also 22 N.Y.C.R.R. § 500.20(a)(4) (noting that criminal leave applications must include "the grounds upon which leave to appeal is sought").

Terrell is now procedurally barred from appealing the Appellate Division's determination because any new request for leave to appeal would be time-barred and Terrell is procedurally barred from raising this claim in a new § 440.10 motion.  Although New York courts require that certain types of ineffective assistance of counsel claims be raised through post-conviction motions rather than on direct appeal, where the basis for an ineffective assistance claim is "well-established" in the trial record, a defendant must raise the ineffective assistance claim on direct appeal.  See N.Y. C.P.L. § 440.10(2)(c); Sweet v. Bennett, 353 F.3d 135, 140 (2d Cir. 2003) (holding that unexhausted ineffective assistance claim was procedurally barred under § 440.10(2)(c) because "the basis for . . . [the] claim was particularly well-established in the trial record"); Murden v. Artuz, 497 F.3d 178, 196 (2d Cir. 2007) ("Where the basis for a claim of

---

[6]  The Second Department's decision on Terrell's direct appeal appears to have rejected this mistrial claim on the merits.  In his direct appeal, Terrell filed a pro se supplemental brief to the Appellate Division raising various claims of ineffective assistance of counsel.  The Appellate Division concluded that, to the extent Terrell's ineffective assistance arguments were based on matters outside the record, the court could not review those arguments on direct appeal.  The Appellate Division, however, also concluded that "[i]nsofar as we are able to review the defendant's [ineffective assistance] claims, we find that defense counsel provided meaningful representation." People v. Terrell, 78 A.D.3d 865 (2d Dep't 2010).  Although the Second Department did not explicitly state which of Terrell's ineffective assistance claims were based on evidence in the trial record and, thus, reviewable in the direct appeal, it appears that the Second Department denied the mistrial claim on the merits because all of the evidence supporting that claim was in the trial record.

[7]  Even if Terrell's request for leave to appeal was sufficient to exhaust his mistrial claim, this would not ultimately help Terrell.  If he exhausted this claim, then the denial of this claim on the merits by the state courts would be entitled to AEDPA deference.  As explained below, Terrell's mistrial claim fails on the merits even if AEDPA's deferential standard is not considered.

ineffective assistance of counsel is well established in the trial record, a state court's reliance [on § 440.10(2)(c)] provides an independent and adequate procedural bar to federal habeas review."); cf. Fulton v. Graham, 802 F.3d 257, 263 (2d Cir. 2015) ("New York courts and those applying New York law routinely conclude that an ineffective assistance claim premised on out-of-court conversations between a defendant and trial counsel . . . must be brought in a § 440.10 proceeding. Only in cases in which the trial record clearly reflects the adequacy of counsel's performance has § 440.10(2)(c) been applied to bar federal review."). Terrell's ineffective assistance claim based on trial counsel's failure to move for a mistrial was well-established in the trial record and had to be raised on direct appeal.[8] Accordingly, the Court concludes that Terrell would be procedurally barred from pursuing this claim in any further § 440.10 motions.

Terrell has not shown cause to overcome this procedural bar. Notably, he never pursued a claim in state court alleging that appellate counsel was ineffective for failing to raise the mistrial claim in his application for leave to appeal. Nor has he shown any other cause to overcome the procedural bar.

Furthermore, even if Terrell's mistrial claim was not procedurally barred, it fails on the merits. Defense counsel's decision not to move for a mistrial was reasonable and, in any event, there is not a reasonable probability that the trial court would have granted a request for a mistrial had he so moved. After learning of the comment at issue, the trial court proposed giving a curative instruction and, upon the parties' consent, gave such an instruction. (Trial Tr. 336–39.) Moreover, nothing in the record indicates that there was a reasonable probability of Terrell prevailing on this issue on appeal. Terrell has not shown how this comment affected the jurors,

---

[8] Even if the Second Department's direct appeal decision is too ambiguous to determine whether the mistrial claim was decided on the merits, it would still be up to this Court to determine whether raising the mistrial claim in a new § 440.10 motion would be procedurally barred by § 440.10(2)(c). For the reasons stated above, the Court finds that Terrell is procedurally barred from raising the mistrial claim in a § 440.10 motion  because that claim is based on material in the trial record.

let alone deprived him of a fair trial.  Courts generally presume that the jury will follow curative instructions such as one given here.  Accord Greer v. Miller, 483 U.S. 756, 766 n.8 (1987).  Thus, trial counsel's failure to request a mistrial did not deny Terrell effective assistance.

### vi. Conflict of Interest

Terrell argues that trial counsel was ineffective because he had a conflict of interest—specifically, counsel previously represented Garrison, who was a prosecution witness, in an unrelated matter.  (Trial Tr. 6–7.)  In the pro se supplemental brief that Terrell submitted on direct appeal, Terrell suggested, in conclusory fashion, that this conflict resulted in trial counsel not adequately investigating his case.  (Def.'s Pro Se Suppl. Br. at 11.)

This claim, which appears to rely on factual assertions outside of the trial record, has not been exhausted.  "The appropriate vehicle . . . to allege ineffective assistance of counsel grounded in allegations referring to facts outside of the trial record is pursuant to CPL 440.10, where matters [outside] the record may be considered."  People v. Rohler, 87 A.D.3d 603, 604 (2d Dep't 2011) (quoting People v. Miller, 68 A.D.3d 1135 (2d Dep't 2009)).  Terrell raised this claim in the supplemental brief that he submitted on his direct appeal.  He did not raise this issue in either of his § 440.10 motions.

In any event, this claim is plainly meritless.

"A defendant's Sixth Amendment right to counsel includes a right to conflict-free representation."  Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000) (quoting United States v. Rogers, 209 F.3d 139, 143 (2d Cir. 2000)).  "Assertions of the right to conflict-free counsel are of four different varieties: (a) that the district court's knowledge of a possible conflict imposed upon it a duty of inquiry; (b) that there was a 'per se' conflict; (c) that there was an actual conflict; and (d) that there was a potential conflict."  Id.

Here, trial counsel's prior representation of Garrison was merely a potential conflict. "In order to prevail on [a potential conflict] claim, the petitioner must establish both that counsel's conduct fell below an objective standard of reasonableness and that but for this deficient conduct, the result of the trial would have been different, under the familiar standard established by Strickland." Id. at 84. Terrell cannot meet this standard. Trial counsel was effective—he vigorously cross-examined Garrison and impeached her with her prior convictions. (Trial Tr. 350–51.) Moreover, Terrell cannot meet Strickland's prejudice prong because Garrison was a relatively minor witness given the other evidence arrayed against Terrell in this case. In her brief testimony, she stated that Terrell came to her home and told her, "I did it, watch the news, get a newspaper." (Trial Tr. 349.)

Additionally, even if trial counsel's prior representation rose to the level of an actual conflict, Terrell's claim would still fail. "When counsel is burdened by an actual conflict that adversely affects performance, the defendant is not required to demonstrate prejudice; prejudice is presumed." Armienti, 234 F.3d at 824. "To prove adverse effect, the defendant must "demonstrate that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Id. (quoting United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994)). In the pro se supplemental brief that he submitted on direct appeal, Terrell asserted, in conclusory fashion, that trial counsel failed to adequately investigate his case. This alleged failure to investigate, however, has no connection to the alleged conflict involving Garrison and, thus, cannot support an actual conflict claim.

Similarly, in considering an alleged conflict of interest, New York state courts analyze whether the conflict "bears a substantial relation to 'the conduct of the defense.'" People v.

McDonald, 68 N.Y.2d 1, 9 (1986) (quoting People v. Lombardo, 61 N.Y.2d 97, 103 (1984)).  For example, courts may find "conflicting loyalties" where the witness "provided important evidence of defendant's motive" or was the chief witness in the case.  Id.  As explained above, Garrison was a relatively minor witness.

Accordingly, Terrell's conflict claim is denied.

### vii.  Failure to Object When the Jury Sang "Happy Birthday"

Terrell claims that he was denied effective assistance of counsel when trial counsel failed to object after the jury sang "Happy Birthday" to the judge.  (Pet. at 6–7.)  This claim has not been exhausted, but is denied on the merits because it is frivolous.

When Terrell attempted to raise this argument on direct appeal, the Second Department apparently declined to consider it because it was based on matters outside of the record.  People v. Terrell, 78 A.D.3d 865, 866 (2d Dep't 2010).  The trial record indicates only that trial counsel and the prosecutor extended birthday wishes to the judge—the trial record does not reflect that the jury sang "Happy Birthday" to the judge.  (Trial Tr. 571.)  Terrell has not raised this claim in a motion to vacate under Section 440.10.  Accordingly, Terrell has not exhausted this claim.

This claim, however,  is frivolous.  In trial counsel's 2014 letter to this Court, counsel admits that "there was a moment when the jury walked into the court in the morning before the trial continued and sang happy birthday to the judge."  (Lo Piccolo Ltr., Jan. 10, 2014,  ECF No. 15-31.)  Trial counsel did not object because he "did not see how this incident, albeit a unique one, rose to the level of a mistrial."  (Id.)  Trial counsel's failure to object was not ineffective assistance of counsel.  And, there is not a reasonable probability that such an objection would have affected the outcome of the proceeding.  Therefore, this claim is denied on the merits.

### 3. Ineffective Assistance Claims Concerning Potential Plea Bargain

Terrell's habeas petition raises an ineffective assistance claim concerning an alleged "failed plea bargaining offer" that would have required Terrell to plead guilty to first-degree manslaughter. (Pet. at 5.) Terrell asserts that trial counsel: (1) only discussed a potential plea offer with him briefly before a pre-trial conference; and (2) never told him how much time the prosecution was offering if he pled to first-degree manslaughter. (Id. at 8.) In his petition, Terrell asks for a "plea bargain hearing." (Id. at 18.) Terrell raised the same arguments in his second § 440.10 motion.

As explained below, Terrell's plea claim ultimately fails on the merits. However, before addressing the substance of Terrell's claim, the Court will address which standard of review applies. In opposing the instant petition, Respondent suggests that the state court rejected this claim on the merits. (Respondent Mem. at 29, ECF No. 15.) If the state court had denied this claim on the merits, then AEDPA's deferential standard of review would apply. Justice Ayres, however, did not reach the merits of this claim. Rather, Justice Ayres concluded that Terrell's plea-based ineffective assistance claim was procedurally barred by N.Y. C.P.L. § 440.10(3)(c) because Terrell "was in a position [to adequately] raise the ground or issue underlying the present motion but did not do so." (Order Denying Def.'s Second 440.10 Mot., June 14, 2013, at 2 (quoting § 440.10(3)(c)), ECF No. 15-27 .) The questions before the Court, then, are: (1) whether Terrell has shown cause and prejudice sufficient to overcome this procedural bar, and (2) if so, whether Terrell's claim survives on the merits under de novo review.

In order to overcome this procedural bar, Terrell would have to establish cause and prejudice. The Supreme Court's decision in Martinez v. Ryan, 566 U.S. 1 (2012), indicates that a petitioner can establish cause to overcome a procedural default when a state's courts do not

permit a petitioner to bring ineffective assistance of trial counsel claims on direct appeal and the petitioner was not provided counsel to pursue such ineffective assistance claims in his initial collateral review proceeding in state court.[9]  See also Trevino v. Thaler, 133 S. Ct. 1911 (2013).

The Second Circuit has not determined how Martinez and Trevino apply to the procedures that New York State courts apply in reviewing ineffective assistance claims.  At least one district court has concluded that Martinez is applicable to certain ineffective assistance claims raised by New York petitioners.  See Fuentes v. Griffin, No. 11-CV-5172, 2013 WL 9769069, at *14 (E.D.N.Y. June 26, 2013), report and recommendation adopted in part, rejected in part on other grounds, No. 2014 WL 4966123 (E.D.N.Y. Sept. 30, 2014), rev'd and remanded sub nom. on other grounds, Fuentes v. T. Griffin, 829 F.3d 233 (2d Cir. 2016).  Here, it is undisputed that Terrell was not provided with counsel for either of his § 440.10 motions.  Ultimately, the Court does not have to resolve the application of Martinez to the instant case because, as explained below, even if Martinez is applicable to Terrell's claim and his procedural default is excused, his ineffective assistance claim still fails on the merits.

>     *i.  Legal Standards for Governing Ineffective Assistance Claims, Habeas Hearings, and Habeas Discovery.*

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process."  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012).  Thus, the Strickland ineffective assistance standard is applicable to the plea bargaining context.  Again, the performance component of the Strickland test asks whether a "counsel's representation fell below an objective standard of reasonableness."  Kovacs v. United States, 744 F.3d 44, 50 (2d Cir. 2014) (quoting Strickland, 466 U.S. at 688).  "A defense counsel's performance is unreasonable when it is so

---

[9]  Under Martinez, once a petitioner establishes cause, the petitioner "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  132 S. Ct. at 1318 (suggesting that this standard for "substantial claims" is analogous to the standard that courts apply in determining whether to grant a certificate of appealability).

deficient that it falls outside the 'wide range of professionally competent assistance.'" Id. at 44 (quoting Strickland, 466 U.S. at 690).

In the plea bargaining context, a petitioner can establish prejudice by showing that:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012); see also Missouri v. Frye, 132 S. Ct. 1399 (2012). "Most courts . . . have interpreted Lafler and Frye to require the extension of a formal plea offer in order for a petitioner to prevail on claims of ineffective assistance in the context of plea negotiations." Locurto v. United States, No. 10-CV-4589, 2016 WL 4257550, at *8 (E.D.N.Y. Aug. 12, 2016) (collecting cases); see, e.g., Barnes v. United States, No. 09-CR-1053, 2013 WL 3357925, at *7 (S.D.N.Y. July 2, 2013) (rejecting ineffective assistance claim for lack of a formal plea offer, because "it would be entirely speculative to consider the terms, including the length of sentence, of a theoretical plea bargain"). However, as the court in Locurto explained,

> [N]ot all courts have taken such a formalistic view of the plea bargaining process. In United States v. Gordon, 156 F.3d 376 (2d Cir. 1998) (per curiam), which pre-dated Lafler and Frye, the Second Circuit rejected the distinction between formal and informal offers, holding that "whether the government . . . made a formal plea offer was irrelevant," and finding that the petitioner "was nonetheless prejudiced because he did not have accurate information upon which to make his decision to pursue further plea negotiations or go to trial." Id. at 381. More recently, this court held that the lack of a formal offer "strongly weighs against a finding that [the petitioner] would have pled guilty"; however, the court treated the existence of a formal offer as an important but non-dispositive "factor[ ] affecting whether a petitioner has proven prejudice in the plea bargaining context." DeFilippo v. United States, No. 09-CV-4153 (NGG), 2013 WL 817196, at *6 (E.D.N.Y. Mar. 5, 2013) (citing Lafler, 132 S. Ct. at 1385).

Locurto, 2016 WL 4257550, at *8 (ordering evidentiary hearing because there was a factual dispute "as to whether Petitioner received a plea offer at all, let alone a formal one").

The Court assumes arguendo that even if the prosecution never presented a formal plea offer, a petitioner can still state an ineffective assistance claim if: (1) defense counsel's performance concerning plea discussions with both the petitioner and/or the prosecution was unreasonably deficient; and (2) absent defense counsel's deficiency, there is a reasonable probability that the prosecution would have offered a plea deal and the petitioner and the court would have accepted the plea deal.[10]

As part of Terrell's ineffective assistance claim, he requested an evidentiary hearing. In a habeas proceeding, "[t]he procedure for determining whether a hearing is necessary is in part analogous to, but in part different from, a summary judgment proceeding." Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (addressing petition under § 2255). In a habeas hearing, the court determines "whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a prima facie case for relief." Id. "If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." Id. However, in considering whether to hold an evidentiary hearing, a "district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted

---

[10] The Court assumes that if Martinez excuses Terrell's procedural default, then Terrell's claim would reviewed de novo. As explained earlier, according to the First Circuit, even where AEDPA deference does not apply and a petitioner's claim is reviewed de novo by the federal habeas court, the petitioner must still meet Teague's requirement that the constitutional right invoked by the petitioner "was clearly established by existing precedent at the time the state conviction became final." Kater v. Maloney, 459 F.3d 56, 62–64 (1st Cir. 2006) (citing Teague v. Lane, 489 U.S. 288 (1989)). It is an interesting question whether a plea-based ineffective assistance claim can meet this standard when no formal plea offer was made by the prosecution. Compare Gordon, 156 F.3d 376 (2d Cir. 1998) with Lafler, 132 S. Ct. at 1387 ("If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise."); Frye, 132 S. Ct. at 1408 ("[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). The Court does not have to resolve this question because, as explained below, even assuming that no formal plea offer is required, Terrell's ineffective assistance claim fails.

by the record in the underlying proceeding." Id.; see also Beauchamp v. Perez, No. 13-CV-2452, 2014 WL 2767208, at *1 (S.D.N.Y. Apr. 30, 2014) (denying § 2254 petition and request for hearing concerning plea offer because petitioner's account of events was not credible in light of the other evidence in the record).

Relatedly, a petitioner may seek a hearing or discovery in order to further develop the factual record. "[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Drake v. Portuondo, 321 F.3d 338, 345–46 (2d Cir. 2003) (quoting Bracy v. Gramley, 520 U.S. 899, 908-09 (1997)). "Although a 'habeas petitioner, unlike the usual civil litigant in federal court is not entitled to discovery as a matter of ordinary course,' discovery may be granted upon a showing of 'good cause.'" Id. (quoting Bracy, 520 U.S. at 904, and citing Rules Governing § 2254 cases, Rule 6(a), 28 U.S.C. Foll. § 2254.)

In light of the standards outlined above, the Court must determine whether Terrell has stated a prima facie case for any of his allegations of ineffective assistance of counsel. And, even if Terrell does offer evidence of a prima facie case, the Court must determine whether he has offered sufficiently credible evidence such that a hearing would be necessary to resolve any disputed issues of fact. Finally, the Court must consider whether Terrell is entitled to a hearing in order to further develop the record.

### ii. Evidence Concerning the Potential Plea

At a pre-trial hearing where Terrell was present, Terrell's trial counsel stated the following on the record:

> Your Honor, pursuant to our conversation in the back, which I will make absolutely clear, an informal discussion about a potential plea in this case, I spoke

to Mr. Terrell and he is not interested even in a plea to manslaughter in the first degree. I wanted to make it clear, before the People went back to talk to her boss, that he is not interested in such a disposition. He is looking for a manslaughter [charge] in the second degree.

(Hr'g Tr. 2, 32–3.) Upon hearing this, the court told the prosecutor, "Don't waste your breath talking to your supervisor about a plea for Mr. Terrell." (Hr'g Tr. 33.) Terrell did not voice any objection during this exchange.

After Terrell was convicted, trial counsel submitted a letter, dated January 20, 2009, to the "Court Intervention Project" seeking assistance in preparing a "defense pre-sentence report." (Jan. 20. 2009 Ltr., ECF No. 19.) In the letter, trial counsel states:

[Terrell] did not want to plead guilty to even the lesser charge of manslaughter in the first degree because he did not believe that his acts were intentional as he stopped and tried to save [the victim]. As such, I was not allowed to negotiate a lesser charge on his behalf except for manslaughter in the second degree which the prosecution was never considering.

(Id.)

The first time that Terrell claimed that trial counsel was ineffective concerning a potential plea offer was in his second § 440.10 motion. In response to that motion, the People filed an affirmation from assistant district attorney Judith Steinberg, who prepared the People's opposition to the motion. In her affirmation, Steinberg attests that she spoke with Terrell's trial counsel, who informed her that "all sentencing options and possibilities were discussed with the defendant from the beginning of the case through the decision to go to trial." (Steinberg Aff. ¶ 11, ECF No. 15-26.) According to Steinberg, these discussions included "explanations of the sentence exposure that would result depending on whether defendant were convicted of murder, manslaughter in the first degree, manslaughter in the second degree, or criminally negligent homicide." (Id.)

After Terrell filed the instant petition, his trial counsel submitted a letter stating:

> During the course of my representation of the petitioner, I advised the defendant of the charge he was facing and the potential lesser charges through a plea bargain or a jury verdict if a plea was not sought. These conversations happened both before and after the pre-trial hearing during counsel's jail visits with the petitioner. There was never a formal plea offer made the by the prosecution. To the best of counsel's recollection, when the Court advised the People that they should speak to a supervisor about a plea offer between the morning and afternoon session of the pre-trial hearing, the petitioner spoke up and advised the Court he did not wish a plea bargain. I believe the Court's response was to advise the People not to bother in light of the petitioner's response.[11]

(Lo Piccolo Ltr. at 2.)

Again, Terrell's instant petition and his second § 440.10 motion both allege that trial counsel: (1) only discussed the potential plea offer with him briefly before the pre-trial conference; and (2) never told him how much time the prosecution was offering if he pled to first-degree manslaughter.

### iii. The Court's Findings and Conclusions

Based on the current record, the Court makes the following factual findings and conclusions.

First, the Court finds that no formal plea offer was ever made by the prosecution.[12]

Second, although Terrell faults trial counsel for not telling him what sentence the prosecution was willing to agree to if Terrell pled guilty to first-degree manslaughter, there is no evidence in the current record indicating that specific sentences (or even sentencing ranges) were ever discussed during any preliminary conversations that trial counsel had with the prosecution.

---

[11] Contrary to trial counsel's assertion, the trial transcript does not indicate that Terrell spoke to the Court at the pre-trial conference. Rather, the transcript indicates that trial counsel was the one who informed the Court that Terrell was "not interested even in a plea to manslaughter in the first degree." (Hr'g Tr. 32–33.) Ultimately, the Court does not find that this contradiction affects the credibility of the other statements in trial counsel's letter.

[12] Terrell's reply papers insist that the prosecution did make a plea offer, citing to a letter from Terrell's appellate counsel, which states that "My notes regarding page 32 indicate you were offered a plea to manslaughter in the 1st degree and you turned it down because you wanted manslaughter in the 2nd degree." (Ltr. from Martin Golderg, ECF No. 19.) It appears appellate counsel was referring to page 32 of the trial transcript, which, despite appellate counsel's characterization, does not indicate that a formal plea offer was ever made.

Thus, based on the current record, Terrell cannot establish a prima facie case that trial counsel was ineffective for failing to disclose any such information to Terrell.

Third, the Court finds that, contrary to Terrell's claim, trial counsel did speak to Terrell about a potential plea prior to the pre-trial hearing.  Terrell's assertion on this point is conclusory and refuted by trial counsel's 2014 letter to the Court, which states that trial counsel discussed the possibility of a plea bargain during his visits with petitioner in jail.  Also, the fact that Terrell waited until his third post-conviction filing to raise allegations concerning a potential plea undermines his credibility concerning his allegations.  Furthermore, even if trial counsel did not speak to Terrell about a plea offer prior to a brief discussion at the pre-trial hearing, Terrell's ineffective assistance claim would still fail.  Terrell has not alleged that, at any point after the pre-trial hearing, he informed trial counsel that he wished to discuss the potential plea further.  Accordingly, trial counsel had no reason to believe that Terrell was interested in any plea that required him to plead to first-degree manslaughter.

Fourth, the Court finds credible the assertions made by trial counsel in his January 2009 letter to the "Court Intervention Project," which states:

> [Terrell] did not want to plead guilty to even the lesser charge of manslaughter in the first degree because he did not believe that his acts were intentional as he stopped and tried to save [the victim].  As such, I was not allowed to negotiate a lesser charge on his behalf except for manslaughter in the second degree which the prosecution was never considering.

(Id.)  Terrell has never denied making these statements to trial counsel and Terrell never said anything to the trial judge when trial counsel made a similar statement in open court.[13]  In light of this factual finding, the Court concludes that trial counsel acted reasonably in not pursuing any

---

[13]  Notably, Terrell himself submitted the January 2009 letter to this Court as part of his reply submission.

further plea discussions with the prosecution. Terrell made it clear that he would not accept a first-degree manslaughter plea.

Fifth, Terrell has never submitted a sworn affidavit stating what plea offer he would have been willing to accept. Absent such evidence, Terrell cannot possibly establish prejudice.

For the reasons stated above, Terrell's ineffective assistance claims are meritless and a hearing is not required to resolve any potential factual disputes. The only remaining question is whether Terrell is entitled to a hearing that would allow him to further develop the record. The Court concludes that he is not. Terrell, whose claims are exceedingly weak and speculative, has not established "good cause" to warrant further development of the factual record.[14] Drake, 321 F.3d at 345–46; cf. Williams v. Menifee, 331 F. App'x 59, 61 (2d Cir. 2009) (holding that district court did not abuse its discretion in denying petitioner's request for discovery because "based on the relative strength of his constitutional claims, his request was not supported by 'good cause'"). Notably, even if a hearing were to reveal that the prosecution would have been willing to offer Terrell a substantially lower sentence for a first-degree manslaughter plea than

---

[14] Not only has Terrell failed to establish the necessary good cause to receive an evidentiary hearing in order to further develop the record, but he may also be procedurally barred from receiving an evidentiary hearing. Under § 2254(e)(2) of AEDPA, a petitioner who seeks an evidentiary hearing, but failed to act diligently to develop the factual basis of his claim in state court faces difficult procedural hurdles. 28 U.S.C. § 2254(e)(2); Williams v. Taylor, 529 U.S. 420, 432 (2000). If applicable here, those procedural hurdles would bar Terrell's request. Thus, the Court could not even consider the possibility of a hearing unless Terrell acted with the requisite diligence in attempting to develop the factual basis for his claim in state court. "[A] habeas petitioner generally demonstrates the requisite diligence when . . . he requests an evidentiary hearing in conjunction with a § 440.10 motion that concerns out-of-court conduct." Fulton v. Graham, 802 F.3d 257, 266 (2d Cir. 2015).

Here, Terrell requested an evidentiary hearing in state court. However, he only did so after filing an earlier § 440.10 motion and a coram nobis petition—neither of which raised any plea-based claims. Terrell has not provided any explanation for why he waited so long to raise plea-based claims (and an accompanying request for an evidentiary hearing) in state court. In light of those facts, Terrell's request for an evidentiary hearing may be precluded by § 2254(e)(2) because he failed to diligently pursue a hearing in state court. The Court notes that although the fact that Terrell had to litigate his initial § 440.10 motion pro se might, under Martinez v. Ryan, excuse his procedural default for his plea-based claim, his pro se status may not necessarily be sufficient to excuse his lack of diligence in developing the record in state court, as required by § 2254(e)(2). Cf. Galloway v. Wenerowicz, No. 13-CV-956, 2016 WL 2894476, at *9 (W.D. Pa. Apr. 20, 2016) (report and recommendation) (rejecting "Petitioner's contention that Martinez excuses his [post-conviction] counsel's failure to develop the record in the [post-conviction] proceedings such that this Court can hold an evidentiary hearing on this claim in the first instance"), adopted by, 2016 WL 2866765 (W.D. Pa. May 17, 2016).

the sentence that Terrell ultimately received, any assertion by Terrell that he would have accepted such a plea would be patently incredible.  As the Court found above, "[Terrell] did not want to plead guilty to even the lesser charge of manslaughter in the first degree because he did not believe that his acts were intentional as he stopped and tried to save [the victim]," and Terrell said nothing when trial counsel made a similar representation to the trial court.

Accordingly, Terrell's ineffective assistance claims concerning the potential plea are denied.[15]

### 4. Appellate Counsel Claims

Terrell cites "numerous" alleged deficiencies concerning his appellate counsel.  (Pet. at 13–14.)  Specifically, Terrell's petition asserts that appellate counsel should have argued that trial counsel was ineffective concerning the potential plea, the EED defense, and the unrelated defendant's "do the right thing" comment to the jury.  In Terrell's coram nobis petition, he raised the latter two arguments and also asserted that appellate counsel should have raised ineffective

---

[15] In both his § 2254 petition and his second § 440.10 motion, Terrell argued that trial counsel:  (1) only discussed a potential plea offer with him briefly before a pre-trial conference; and (2) never told him how much time the prosecution was offering if he pled to first-degree manslaughter.  As explained above, these claims are meritless. The Court notes that in Terrell's § 2254 response brief, he raises additional allegations of ineffective assistance surrounding the potential plea.  These additional claims have not been exhausted and, in any event, Terrell has waived these arguments by raising them for the first time in his reply papers.  Moreover, these claims are substantively meritless.

In his § 2254 response brief, Terrell contends that trial counsel:  (1) failed to advise him about the merits of a plea; (2) should have "vigorously advise[d] petitioner to accept the plea"; and (3) failed to adequately explain the maximum sentence that he faced by going to trial.  (Pet'r's Resp. Br. at 17.)  Terrell, however, has not offered any evidence, such as his own affidavit, in support of these allegations, which are raised solely in his brief.

In his § 2254 response brief, Terrell also argues that defense counsel gave him erroneous advice about the inapplicability of an EED defense and that, absent this erroneous advice, Terrell would have been willing to accept a plea deal of manslaughter in the first degree.  (Id. at 16.)  In his brief, Terrell suggests that defense counsel "misinformed [him] that he could only obtain an instruction on EED if psychiatrists or other experts testified in support of the [EED] defense."  (Id.)  This claim is meritless.  First, Terrell has not submitted a sworn affidavit identifying defense counsel's allegedly erroneous advice or attesting that he would have accepted a first-degree manslaughter plea.  Second, as explained earlier, EED was not a viable defense in this case.  Third, Terrell's claim that he would have pled guilty to first-degree manslaughter if his trial counsel had told him that an EED defense was available is nonsensical.  If Terrell had been told by defense counsel that an additional defense could have been raised at trial, that fact would have made Terrell less likely to plead guilty.

assistance claims concerning: the alleged conflict of interest; the failure to call Dr. Taff; the alleged failure to investigate; and the jury's singing of "Happy Birthday." The coram nobis petition also raised ineffective assistance of appellate counsel claims concerning the trial court's failure to instruct the jury concerning first-degree manslaughter and trial counsel's failure to request this instruction.[16] Essentially, Terrell recasts all of the issues that the Court has already addressed as ineffective assistance of appellate counsel claims. The Court has already explained why all of these claims are meritless. Accordingly, appellate counsel made a reasonable strategic decision to focus the appeal on Terrell's sentence.

Moreover, Terrell failed to exhaust these claims. Terrell failed to exhaust his claim concerning an alleged plea deal because he did not mention this claim in his coram nobis application. (See Def.'s Coram Nobis Appl., Sept. 18, 2012, ECF No. 15-19.) Because he could potentially seek relief for that claim through a second coram nobis application, this claim is unexhausted. See Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).

Terrell's remaining ineffective assistance of appellate counsel claims are also unexhausted. Although Terrell raised all of these claims in his coram nobis application, Terrell failed to adequately raise any of these arguments in his application for leave to appeal to the New York Court of Appeals. (See Leave Appl. to Appeal the Denial of Coram Nobis Appl., Sept. 4, 2012, ECF No. 15-23.) Specifically, Terrell did not identify any grounds for relief in his application for leave to appeal. See 22 N.Y.C.R.R. § 500.20(a)(4) (noting that criminal leave applications must include "the grounds upon which leave to appeal is sought").

---

[16] Although Terrell's habeas petition does not explicitly mention all of the grounds that he raised in his coram nobis petition, the Court assumes arguendo that Terrell has sought to raise all of the same claims in his habeas petition.

**5. Sentencing Claims**

Terrell makes two arguments concerning his sentence: (1) his sentence was excessive, and (2) the $5,000 fine imposed constituted cruel and usual punishment.  (Pet. at 10–11.)  Both grounds are meritless.

### i. Excessive Sentence

Terrell's excessive sentence claim does not present any federal constitutional issues because the sentence he received "is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); Taylor v. Connelly, 18 F. Supp. 3d 242, 268 (E.D.N.Y. 2014) (finding that "[a]n excessive sentence claim may not provide grounds for habeas corpus relief where a petitioner's sentence is within the range prescribed by state law" and collecting cases).  Under New York law, a person convicted of second-degree murder, a class A-I felony, may be sentenced to an indeterminate term of fifteen years to life imprisonment.  N.Y. Penal Law §§ 70.00(2)(a), (3)(a)(i) & 125.25.  Terrell was sentenced to an indeterminate term of imprisonment of twenty-five years to life.  (Sentencing Tr. 11.)  Thus, Terrell's sentence fits within the statutory limits, and Terrell has failed to raise a federal claim that is cognizable in a § 2254 petition.

### ii. Cruel and Unusual Punishment

Terrell's claim that his $5,000 fine constitutes cruel and unusual punishment under the Eighth Amendment is unexhausted.  (See Pet. at 10–11.)  Although Terrell argued that his sentence was excessive in his appeal to the Second Department, but he did not previously invoke the Eighth Amendment in challenging the fine.  See People v. Terrell, 78 A.D.3d 865, 866 (2d Dep't 2011).  Terrell may still attempt to bring a §440.20 motion to set aside that aspect of his sentence.  Therefore, this claim is unexhausted.

Nevertheless, the Court will reach the merits of these claims as they are clearly meritless. First, Terrell argues that, under N.Y. Penal Law § 80.00(2)(3), he cannot be fined unless he gained money or property from the commission of the crime. (Pet'r's Resp. Br. at 23, ECF No. 20.) This argument fails because a different section of the statute, § 80.00(1)(a), permitted the $5,000 fine imposed on Terrell.

Second, the $5,000 fine is not grossly disproportionate to Terrell's crime. In this context, "successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980). Indeed, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 24 (2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)). A $5,000 fine is not "grossly disproportionate" to a second-degree murder conviction. The trial court exercised its discretion to impress upon Terrell the severity of his actions. Therefore, Terrell is not entitled to habeas relief.

### 6. Request for Evidentiary Hearing

Terrell has also requested an evidentiary hearing.[17]  (Mot. for Hr'g at 2, ECF No. 22.) The Court already rejected Terrell's claim for an evidentiary hearing concerning Terrell's plea-based ineffective assistance claim. Terrell's other, generalized, request for an evidentiary hearing is also  meritless.

28 U.S.C. § 2254(e)(2) states that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
>> (A) the claim relies on—

---

[17] The Court previously denied petitioner's request for a hearing in a brief order, which indicated that the Court would reconsider that decision if the Court subsequently determined that a hearing was necessary. After reviewing the fully briefed habeas petition, the Court concludes that a hearing is not warranted.

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"[A] habeas petitioner generally demonstrates the requisite diligence when . . . he requests an evidentiary hearing in conjunction with a § 440.10 motion that concerns out-of-court conduct." Fulton v. Graham, 802 F.3d 257, 266 (2d Cir. 2015).

In addition, when a state court has rejected a claim on the merits, and a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), the federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits," Cullen v. Pinholster, 563 U.S. 170, 181–82 (2011).

Terrell sought an evidentiary hearing in state court concerning his plea-based ineffective assistance claim. Terrell, however, did not seek an evidentiary hearing in state court on any other issues. Accordingly, Terrell has not acted with the requisite diligence and, thus, his additional request for an evidentiary hearing is denied. The Court also notes that Terrell has not even identified what issues such an evidentiary hearing would seek to explore. That fact and the Supreme Court's decision in Cullen are further reasons to deny his request for a hearing.

### III. CONCLUSION

Because the Court has considered all of Terrell's arguments and found them meritless, the petition is DENIED, and his requests for an evidentiary hearing are DENIED. A certificate of appealability shall not issue because Terrell has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to serve notice of entry of this Order on all parties and to close the case.

**SO ORDERED.**

Dated:  May 26, 2017
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE

40